ANTONIA M. APPS
REGIONAL DIRECTOR
Thomas P. Smith, Jr.
Celeste A. Chase
Ibrahim Sajalieu Bah
Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
100 Pearl Street, Suite 20-100
New York, NY 10004-2616
(212) 336-0418 (Bah)
BahI@sec.gov

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>ROBERT DEL PRETE,<br><br>Defendant, | **COMPLAINT**<br><br>23 Civ. _____ ( )<br><br>JURY TRIAL DEMANDED |

Plaintiff Securities and Exchange Commission ("Commission"), 100 Pearl Street, Suite 20-100, New York, NY 10004, alleges as follows for its Complaint against Defendant Robert Del Prete ("Del Prete"), whose last known address is 23 Evelyn Court, Brick Township, New Jersey 08723.

## SUMMARY OF ALLEGATIONS

1. This is an insider trading case alleging Del Prete illegally traded the stock of HighCape Capital Acquisition Corp. ("HighCape") on the basis of material non-public information relating to HighCape's merger with Quantum-Si Incorporated ("QSI").

2. Del Prete, an accounting consultant to HighCape, was, among other things, present at board meetings on January 27 and February 17, 2021, where the planned merger with QSI was discussed.

3. Del Prete, who had agreed to keep HighCape's proprietary information confidential, bought 5,789.65 shares of HighCape on February 17, 2021, less than an hour after attending the board meeting that day.

4. Within hours of HighCape's February 18, 2021 press release announcing the deal, Del Prete liquidated his position, realizing an approximate one-hundred percent profit of $60,170 on his illegal trading.

5. When questioned about his trades, Del Prete falsely reported to HighCape's Chief Financial Officer ("CFO") that he was not aware of the planned merger before the press release, although the two had been working on various aspects of the deal from at least January 27, 2021.

## VIOLATIONS

6. By engaging in the conduct alleged herein, Del Prete violated Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5] thereunder.

7. Unless Del Prete is permanently restrained and enjoined, he will engage in the acts, practices, transactions, and courses of business set forth in this Complaint or in acts, practices, transactions, and courses of business of similar type and object.

## NATURE OF THE PROCEEDINGS AND RELIEF SOUGHT

8. The Commission brings this action pursuant to authority conferred upon it by Sections 21(d) and 21A of the Exchange Act [15 U.S.C. §§ 78u(d) and 78u-1].

9. The Commission seeks a final judgment that: (a) permanently restrains and enjoins Defendant from violating the federal securities laws and rules this Complaint alleges he has violated; (b) orders Defendant to disgorge all ill-gotten gains he received as a result of the violations alleged here and to pay prejudgment interest thereon pursuant to Sections 21(d)(3), 21(d)(5) and 21(d)(7) of the Exchange Act [15 U.S.C. §§ 78u(d)(3), 78u(d)(5) and 78u(d)(7)]; (c) orders Defendant to pay civil monetary penalties pursuant to Section 21A of the Exchange Act [15 U.S.C. § 78u-1]; (d) prohibits Defendant from acting as an officer or director of any issuer that has a class of securities registered pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78l] or that is required to file reports pursuant to Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)], pursuant to Section 21(d)(2) of the Exchange Act [15 U.S.C. § 78u(d)(2)]; and (e) ordering such other and further relief as the Court may deem just and proper.

## JURISDICTION AND VENUE

10. This Court has jurisdiction over this action pursuant to Sections 21(d), 21(e), 21A, and 27 of the Exchange Act [15 U.S.C. § 78u(d), 78u(e), 78u-1, and 78aa].

11. Venue is proper in this district pursuant to Section 27 of the Exchange Act [15 U.S.C. § 78aa] because Del Prete resides in this district and certain of the acts, practices,

transactions, and courses of business constituting the violations alleged in this Complaint occurred in the District of New Jersey.

## DEFENDANT

12.  **Del Prete**, age 38, is a resident of Brick, New Jersey. From September 2019 until May 2022, Del Prete was a consultant to HighCape providing accounting services, including the preparation of various financial reports.

## RELATED PARTY

13.  **HighCape** was a Delaware special purpose acquisition company headquartered in New York, New York. HighCape's common stock was registered with the Commission pursuant to Section 12(b) of the Exchange Act and traded on NASDAQ. Prior to its merger with QSI on June 10, 2021, HighCape filed periodic reports, including Forms 10-K and 10-Q, with the Commission pursuant to Section 13(a) of the Exchange Act and related rules thereunder. After the merger, HighCape changed its name to QSI and its NASDAQ ticker symbol from CAPA to QSI.

## FACTS

**A.   Background**

14.  On June 10, 2020, HighCape was incorporated in Delaware as a special purpose acquisition company for the purpose of effecting a merger or other business combination with one or more operating companies.

15.  On September 9, 2020, HighCape conducted an initial public offering in which it sold 11,500,000 units at a price of $10 per unit, generating gross proceeds of $115,000,000. That same day, HighCape also conducted a private placement in which it sold 405,000 units at a price of $10 per unit to its sponsor, generating gross proceeds of $4,050,000.

16. In September 2020, shortly after HighCape's IPO and private placement, an affiliate, HighCape Capital L.P. ("HCLP"), engaged Del Prete, through his company Del Prete Consulting LLC, as a consultant to provide accounting services, including the preparation of various financial reports for HCLP and its designees.

17. The consulting agreement provided Del Prete a $170,000 annual salary and a 1% interest in HCLP's feeder fund and contained a confidentiality provision. Specifically, the agreement provided, in relevant part, that:

> [T]he Consultant shall keep in confidence and trust all Proprietary Information and will not disclose any Proprietary Information to any person or entity other than [HCLP] or use any Proprietary Information other than in connection with the Consultant's performance of the Consulting Services for the benefit of [HCLP], in each case without the prior written consent of [HCLP].

18. Proprietary Information was defined, in relevant part, as follows:

> This Agreement creates a relationship of confidence and trust between [HCLP] and Consultant with respect to any information: (a) applicable to the business of [HCLP] or (b) applicable to the business of any affiliate of [HCLP] or any portfolio company of any affiliate of [HCLP], which may be made known to Consultant by [HCLP] or by any affiliate of [HCLP] . . . All such information, whether provided prior to, on or after the Effective Date, has commercial value in the business in which [HCLP] is engaged and is hereinafter called "Proprietary Information."

19. The consulting agreement listed the services Del Prete was required to provide, including assisting with the maintenance of general ledgers, calculation of annual performance returns, auditing and tax preparation processes, and preparation of quarterly and annual financial reports, among other things.

20. In addition to performing internal accounting functions, Del Prete served as a point of contact for communications with HighCape's outside auditor and also worked with HighCape's Form 10-K consultant to prepare financial statements and the Form 10-K filing for HighCape.

**B.      Del Prete's Knowledge of the QSI Transaction**

21.     In mid to late fall of 2020, HighCape's CEO began discussions with QSI's founder and Chairman to explore the feasibility of a business combination of the two companies; these discussions resulted in a signed mutual confidentiality agreement on December 31, 2020.

22.     On January 12, 2021, HighCape and QSI entered into a non-binding letter of intent to pursue the proposed business combination.  The following day, HighCape's CFO wrote in an email to a financial advisor: "We signed an LOI for the SPAC and have a [due diligence] call late this afternoon."  Del Prete was copied on the email.

23.     On January 27, 2021, Del Prete attended a special board meeting concerning the proposed business combination between HighCape and QSI.  During this meeting, the board discussed the letter of intent, the results of the due diligence and the valuation analysis.  The board also reviewed the terms of the proposed agreement and the timing of events leading to the transaction's consummation.

24.     On February 1, 2021, Del Prete placed a limit order to buy 1,000 HighCape shares in his account at Broker-Dealer 1 ("BD 1").  The order was rejected because Del Prete did not have sufficient buying power in his account.  Within minutes of the order being rejected, he placed another limit order to buy 100 shares, which was also rejected for the same reason.

25.     On February 2, 2021, HighCape's CFO emailed Del Prete and HighCape's outside 10-K consultant, stating: "....we are working on something for the SPAC that could require us to complete the audit and file the 10-k well in advance of the normal deadline. Could we please have a call ASAP to discuss?"  That same day, Del Prete opened an account at Broker-Dealer 2 ("BD 2").

26. On February 3, 2021, HighCape's CFO and Del Prete had a telephonic meeting with members of HighCape's outside auditing firm and 10-K consultant. Shortly after the meeting, HighCape's CFO emailed HighCape's outside counsel, noting that the company was targeting February 26 to file its Form S-4 on the QSI deal and would need to file its Form 10-K prior to or concurrent with its Form S-4 filing according to the auditor. Del Prete was copied on the email.

27. On February 9, 2021, Del Prete placed three limit orders to buy different amounts of HighCape shares in his account at BD 1, beginning with an order for 1,000 shares, then 100 shares and 1,000 shares again. Each order was rejected before Del Prete submitted the next one; the rejection notices stated: "[o]n this account you cannot open new equity positions," prompting Del Prete to write to BD 1 that he was unable to initiate a trade in his account.

28. On February 10, 2021, Del Prete deposited $60,000 into his account at BD 1 and then placed a limit order to buy 100 HighCape shares, but the order was rejected with the same notation as before. He called BD 1 about the restrictions on his account and later received a message from BD 1 that his account was restricted to liquidating transactions only. He was also informed that the trade restriction would be removed – or that he could buy stocks – once the deposited funds fully cleared on February 16, 2021.

29. On February 12, 2021, HighCape's CFO emailed HighCape's Chief Executive Officer ("CEO") and the board members, stating: "Hi all, could you please let me know your availability at 8am ET on Wednesday, February 17th for a one-hour board meeting to discuss and review the QSI transaction?" Del Prete was copied on the email.

30. Within less than an hour of the CFO's email, Del Prete wrote to BD 1 about the hold on his $60,000 deposit stating: "Just so I understand, does that mean I'll be able to trade on

2/16 or 2/17?"  BD 1 replied, stating: "You can trade on the 16th.  The flag will be removed first thing that morning."

31. Later in the evening of February 12, 2021, HighCape's CFO circulated a Zoom invite to the board for the meeting scheduled for Wednesday, February 17, 2021, from 1 to 2 pm. The CFO followed up noting that the time for the board meeting had been changed to 8 am.  Del Prete was included on the Zoom invite.

32. On February 15, 2021, HighCape's CFO started sending emails to prospective investors in a planned Public Investment in a Private Equity ("PIPE") offering by HighCape, noting that "[w]hile this financing will not be funded until the merger with QSI closed on May 15th (this is just an estimate), the fund and QSI Invest are executing a binding commitment to invest in the transaction on Wednesday [February 17, 2021]....."  Del Prete was copied on the emails.

33. In the morning to early afternoon of February 16, 2021, Del Prete again placed multiple limit orders at different prices to buy HighCape shares, which were also successively rejected.

34. On February 16, 2021, an investment banker working on the planned PIPE transaction emailed HighCape's CFO and others working on the PIPE transaction, noting that "the transaction will be announced Thursday morning, February 18, 2021, before market open."  The CFO forwarded the email to Del Prete early on February 17, 2021, which Del Prete responded to at 7:16 am that day.

35. Del Prete attended the special board meeting on February 17, 2021 to discuss the business combination between HighCape and QSI.  The meeting started at 8:00 am and

concluded at 8:45 am. HighCape's board reviewed and approved the proposed business combination at the meeting and QSI's board similarly approved the transaction.

36. A reasonable investor would have viewed information about the business combination between HighCape and QSI and its timing as material to a decision whether to trade HighCape securities.

      **C.**    **Del Prete Traded HighCape Shares for a Quick Profit**

37. On February 17, 2021, immediately after attending the special board meeting, Del Prete began placing orders to buy shares of HighCape. From 9:13 a.m. through 1:08 p.m., Del Prete placed limit orders to buy 5,775 shares in his account at BD 1 at prices between $10.35 and $10.40 per share. The orders were filled the same day at the limit prices for a total cost of approximately $59,994 using approximately 99.99% of the $60,000 that Del Prete had deposited into the account on February 10, 2021. From 9:41 a.m. through 9:44 a.m., Del Prete also bought 14.65 shares of HighCape at an average price of approximately $10.40 for a total cost of approximately $152 in his account at BD 2 using a margin loan.

38. Del Prete's purchase of HighCape shares on February 17, 2021 comprised approximately 34% of the total volume of purchases that day.

39. Around 6:00 am on February 18, 2021, HighCape issued a press release announcing that it had entered into a definitive business combination agreement with QSI, including a $425 million PIPE transaction. At 6:10 am that same day, a general partner at HCLP sent an email to HighCape's CEO, CFO, Del Prete, and others at HighCape alerting them to the issuance of the press release.

40. Upon the opening of the market on February 18, 2021, HighCape's share price rose from its previous day close of $10.38 to $18.20, trading as high as $25, and closing at $22.41.

41. Around 10:07 am on February 18, 2021, Del Prete started placing limit orders to sell the HighCape shares in his account at BD 1. By around 1:21 pm, Del Prete had sold all 5,789.65 HighCape shares in his accounts at BD 1 and BD 2, realizing a profit of $60,170 or an approximate one-hundred percent gain on his purchases.

42. Del Prete purchased High Cape securities on the basis of material nonpublic information he learned based on his position of trust and confidence with HighCape. Del Prete learned Proprietary Information about the HighCape-QSI business combination while subject to an agreement that imposed on him a duty of confidence and trust and an obligation not to misuse Proprietary Information, which he breached by using the Proprietary Information to trade for his personal benefit.

### D. Del Prete Provides False Information

43. In early March 2021, HighCape received a regulatory request seeking information to identify persons who knew of the planned business combination between HighCape and QSI and the date of such knowledge, among other things. On April 7, 2021, in response to the CFO's query about the date of his knowledge, Del Prete wrote: "In regards to my knowledge of the transaction, I became aware when [the HCLP general partner] included me in the press release email to the partners that went out early on February 18th." That response was false because Del Prete had become aware of the planned business combination since at least January 27, 2021, when he attended the special board meeting at which it was discussed.

## FIRST CLAIM FOR RELIEF

### Violations of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder

44. The Commission re-alleges and incorporates by reference here the allegations in paragraphs 1 through 43.

45. Defendant, by engaging in the conduct described above, directly or indirectly, in connection with the purchase or sale of securities, by use of the means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange, knowingly or recklessly:

   a. employed one or more devices, schemes or artifices to defraud;

   b. made one or more untrue statements of a material fact or omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and

   c. engaged in one or more acts, practices or courses of business which operated or would operate as a fraud or deceit upon other persons.

46. By engaging in the conduct described above, Defendant violated, and unless enjoined will in the future violate Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5] thereunder.

## PRAYER FOR RELIEF

**WHEREFORE,** the Commission respectfully requests that the Court:

A. Permanently restrain and enjoin Defendant from violating, directly or indirectly, Section 10(b) of Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5] thereunder;

  B. Order Defendant to disgorge all ill-gotten gains he received directly or indirectly, with prejudgment interest thereon, as a result of the alleged violation pursuant to Sections 21(d)(3), 21(d)(5) and 21(d)(7) of the Exchange Act [15 U.S.C. §§ 78u(d)(3), 78u(d)(5) and 78u(d)(7)];

  C. Order Defendant to pay civil monetary penalties pursuant to Section 21A of the Exchange Act [15 U.S.C. § 78u-1];

  D. Prohibit Defendant from acting as an officer or director of any issuer that has a class of securities registered pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78l] or that is required to file reports pursuant to Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)], pursuant to Section 21(d)(2) of the Exchange Act [15 U.S.C. § 78u(d)(2)]; and

  E. Grant such other and further relief as this Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, the Commission demands trial by jury in this action of all issues so triable.

Dated: New York, New York
      September 18, 2023

        s/ Antonia M. Apps
        ANTONIA M. APPS
        REGIONAL DIRECTOR
        Thomas P. Smith, Jr.
        Celeste A. Chase
        Ibrahim Sajalieu Bah
        Attorneys for Plaintiff
        SECURITIES AND EXCHANGE COMMISSION
        New York Regional Office
        100 Pearl Street, Suite 20-100
        New York, NY 10004-2616
        (212) 336-0418 (Bah)
        BahI@sec.gov

## LOCAL CIVIL RULE 11.2 CERTIFICATION

Pursuant to Local Civil Rule 11.2, I certify that the matter in controversy alleged in the foregoing Complaint is not the subject of any other action pending in any court, or of any pending arbitration or administrative proceeding, except as follows:

The U.S. Attorney's Office for the District of New Jersey filed a criminal complaint against Robert Del Prete in the U.S. District Court, District of New Jersey in Newark on September 18, 2023, captioned, United States of America v. Robert Del Prete, Crim No. 23-745, but it is a criminal matter and the Commission is not a party to it.


Dated: New York, New York
       September 18, 2023

                                          s/ Ibrahim Sajalieu Bah
                                          Ibrahim Sajalieu Bah
                                          Attorney for Plaintiff
                                          SECURITIES AND EXCHANGE COMMISSION
                                          New York Regional Office
                                          100 Pearl Street, Suite 20-100
                                          New York, NY 10004-2616
                                          (212) 336-0418 (Bah)
                                          BahI@sec.gov

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | : : : : | **COMPLAINT** |
| Plaintiff, | : : | 23 Civ. _____ ( ) |
| v. | : : | JURY TRIAL DEMANDED |
| ROBERT DEL PRETE, | : : | |
| Defendant, | : : | DESIGNATION OF AGENT FOR SERVICE |
| | : | |

Pursuant to Local Rule 101.1(f), because the Securities and Exchange Commission (the "Commission") does not have an office in this district, the United States Attorney for the District of New Jersey is hereby designated as eligible as an alternative to the Commission to receive service of all notices or papers in the captioned action. Therefore, service upon the United States or its authorized designee, Matthew J. Mailloux, Assistant United States Attorney, Civil Division, United States Attorney's Office for the District of New Jersey, 970 Broad Street, 7th

Floor, Newark, NJ 07102, shall constitute Service upon the Commission for purposes of this action.

Dated: September 18, 2023

s/ Antonia M. Apps
ANTONIA M. APPS
REGIONAL DIRECTOR
Thomas P. Smith, Jr.
Celeste A. Chase
Ibrahim Sajalieu Bah
Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
100 Pearl Street, Suite 20-100
New York, NY 10004-2616
(212) 336-0418 (Bah)
BahI@sec.gov

16